## PITTS *v.* STUCKERT.

### Opinion delivered February 9, 1914.

1.  COUNTIES—REMOVAL OF COUNTY SEAT—CONTEST.—After judgment upon the returns in an election over the removal of a county seat, the court at its discretion may set aside the judgment and permit a contest. (Page 394.)

2.  COUNTIES—REMOVAL OF COUNTY SEAT—CONTEST.—JURISDICTION OF COUNTY COURT.—The county court has original exclusive jurisdiction of contests of the election for removal of a county seat, and it is error for the circuit court to entertain jurisdiction in the first instance. (Page 394.)

3.  COUNTIES—REMOVAL OF COUNTY SEAT—CONTEST.—The request of petitioners, who made themselves parties to a proceeding in the county court for removal of the county seat, for a recount under

Kirby's Digest, § 2837, will not be construed as the institution of a suit to contest the election. (Page 395.)

4.  COUNTIES—REMOVAL OF COUNTY SEAT—RETURNS.—The general election law applies to an election for removal of a county seat, and the returns should be made to the election commissioner, under Kirby's Digest, § 2833. (Page 396.)

5.  COUNTIES—REMOVAL OF COUNTY SEAT—CANVASSING BOARD.—Under Kirby's Digest, § § 2836, 2837, the canvassing board should not go behind the returns of an election for the removal of a county seat, and purge the returns of illegal votes, as the board has no discretionary powers. (Page 396.)

6.  COUNTIES—REMOVAL OF COUNTY SEAT—CONTEST APPEAL.—The circuit court has jurisdiction, on an appeal from an order of the county court, dismissing a complaint for a contest of an election for removal of a county seat, merely to review the order of the county court, and if it reversed the order, to remand for further proceedings in the county court. (Page 398.)

7.  APPEAL AND ERROR—APPEAL FROM COUNTY COURT—REVIEW.—The issues on an appeal from the county to the circuit court are tried *de novo*, but the appeal must be upon the cause of action that was before the county court, and the circuit court will not allow amendments that will change the cause of action. (Page 399.)

Appeal from Perry Circuit Court; *Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

At the January, 1913, term of the county court of Perry County a petition was filed by the legal voters of that county "for the removal of the county seat and for the submission of the question of removal to an election by the people." The appellants, on their petition, were made parties to the proceedings on January 10, 1913. On the same day the court, upon consideration of the petition for an election on the question of removal, found that the petitioners had in all respects complied with the law in such cases made and provided, and ordered an election to be held on the 15th of March, 1913, on the question as to whether or not the county seat should be removed.

The election was held in accordance with law and the election returns were made to the clerk of the county court, under the provisions of section 1119 of Kirby's

Digest, and he called to his assistance, under the provisions of that section, two justices of the peace, who, with himself, composed the board of canvassers.

On March 20, 1913, after the election was held, the contestants filed a petition, addressed to the board of canvassers, in which they set up that there were irregularities in the election, and illegal votes cast in certain townships, and that the returns as made by the election officers did not show a correct statement of the vote as actually cast, and prayed that the ballots of two townships be re-opened and re-counted, to the end that a proper count may be had."

The board of canvassers made their return to the county court on the 7th of April, 1913. The face of the returns showed that a majority of the electors had voted for the removal, but the canvassing board went beyond the returns and found that, after purging same of all illegal votes there was not a majority in favor of removal, and they therefore certified that removal failed to carry.

The appellees, who were petitioners for removal, moved to strike from the report of the canvassing board that part of the report which showed that the canvassing board had gone behind the returns and the finding made by it to the effect that, after purging the returns of illegal votes found by the said board to have been cast at the election, removal failed to carry. In other words, the appellees moved the court to declare, on the face of the returns, that a majority was in favor of the removal. The record of the court recites that the returns coming on to be heard, "petitioners for removal filed their written motion to strike out certain parts of the returns of the clerk and justices of the peace, and come W. A. McGee, J. M. Nix, G. B. Colvin, W. F. Pitts and E. E. Rankin, by their attorneys, and upon their motion were made parties to this proceeding, and thereupon file their motion to strike the petitioners' motion from the files of the court. And said return coming on for hearing, being argued for the petitioners by J. F. Sellers and by J.

H. Bowen, P. H. Prince and John L. Hill for the other parties, the court being well and sufficiently advised, etc., doth find that at said election so held on March 15, 1913, a majority of the legal voters of the county voted in favor of removal.'' Thereupon the court ordered an election to be held between Perryville, the old county seat, and Bigelow, the town receiving the highest number of votes of any of the places voted upon.

The record shows that the contestants filed a motion in the county court on the 7th of April asking to be made parties ''to the proceedings to change and remove the county seat for the purpose of appealing from any and all orders herein made. The record shows that on the same day contestants moved the court to set aside the order made in the morning, ordering an election, and to allow contestants to show that the first election was not legal, and that there was not a majority of legal votes cast for removal,'' and stating to the court, that ''they were then ready and willing to proceed at once as the law requires to contest the votes cast and to show that a majority was not cast for removal.'' And on the same day, but after the court had adjudged a majority had voted for removal of the county seat, and had ordered the second election between the old county seat and Bigelow, the appellants filed their complaint, setting out specifically the grounds upon which they desired to contest the results of the election, and with the complaint a notice practically in the same language of the complaint, to the contestees, that contestants were going to contest the first election on the question of whether or not there should be a second election on the question of the removal. The notice set out specifically the various grounds upon which contestants would contend that there had not been a majority for removal in the first election.

There is a recital in the record of the county court, entered on April 7, 1913, as follows: ''Now, on this day come the contestants and file their petition for a contest, and comes J. F. Sellers, attorney, and without entering the appearance of any one, moves the court to dismiss

said petition for want of legal notice because the court had already entered judgment upon the returns of the clerk of the county court and the justices of the peace of the election upon the question of removal of the county seat, which motion is sustained and the petition dismissed.''

The record of the county court further shows that on the 8th day of April, 1913, the contestants filed their affidavits and bond for an appeal to the circuit court ''from the judgment rendered on the 7th day of April, 1913, dismissing the complaint to contest the election held for the removal of the county seat.'' The record shows that the county court granted the appeal.

Pending the appeal, a restraining order was made, in vacation, by the judge of the circuit court, which prevented the holding of the election at the time fixed by the county court. The circuit court permitted the contestants to file a pleading in the nature of a complaint, therein repeating and setting out specifically their grounds of contest, and permitted the appellees, the contestees, to file a response, in which they set up, ''without waiving, but still urging, their objection to the jurisdiction of the circuit court to hear the appeal on the complaint of the contestants and on the testimony taken to support the same, their denial of the various allegations of the complaint.''

The contestees also filed a motion to strike ''the paper styled 'Grounds of contest,' for the reason that there was no contest of election upon the question of the removal of the county seat, that was filed in the county court while said court was considering said matter or had jurisdiction thereof; that no contest or purported contest was ever filed in the county court until after the court had passed upon the return of the clerk and the justices of the peace and had ordered an election to be held between Perryville and Bigelow as to which place the county seat should be moved to; that no such case as now presented was ever tried by the county court, and this court is without jurisdiction to maintain the proceeding.''

The contestees also moved to strike out the depositions of the various witnesses because there had been no contest filed in the county court, and also on the ground that the evidence was inadmissible, immaterial, etc. The court overruled these motions, and, after a consideration of the testimony that was taken in the case, affirmed the judgment of the county court, and directed said court to refix the time for holding the election between Perryville, the old county seat, and Bigelow, and from that judgment this appeal has been duly prosecuted.

*P. H. Prince, John L. Hill, J. H. Bowen* and *Carmichael, Brooks, Powers & Rector,* for appellants.

1. The return of the board under section 1119, Kirby's Digest, is conclusive. 96 Ark. 410, and cases cited; 153 S. W. 259; Kirby's Dig., § 1125; Act 119, Acts 1909, p. 331.

2. The basis for determining a majority is prescribed by section 1125, Kirby's Dig.; 45 Ark. 400; 67 *Id.* 591; 49 *Id.* 376; 61 *Id.* 477.

3. Argue on the merits of the case and cite many cases, but the court disposes of the case on the question that no contest was ever had in the county court, and none offered until the county court had declared the result of the election, it is useless to cite the authorities.

*J. F. Sellers,* for appellee.

1. The general election law does not apply to county seat contests, but if it does the report should be made to the election commissioners. Kirby's Dig., §§ 1117-1120; 92 Ark. 67; 79 Ark. 213; 96 Ark. 433.

2. The board can only compare the polls and declare the result. Kirby's Dig., § 1119; 43 Ark. 62; 41 *Id.* 111; 26 *Id.* 112; 33 Ark. 194.

3. There never was a legal contest. The alleged contest came too late. The circuit court obtained no jurisdiction. 25 Ark. 35; 54 *Id.* 409, 40 So. 756; 61 Ark. 253; 33 Ark. 194. Here the whole contest was filed in vacation after the cause had been disposed of in the county court. No court ever acquired jurisdiction. 33

Ark. 194. No new cause of action can be set up by way of amendment. 58 Am. St. 239.

4. No notice of contest was ever properly filed; hence, no jurisdiction in any court. 15 Cyc. 398; 39 Ark. 552. The time for contesting had passed when the county court acted on the returns. 48 S. W. 150; 83 *Id.* 1041.

Wood, J., (after stating the facts). The circuit court found "from the testimony and the record that the contestants were made parties before the county court acted on the return of the clerk and justices of the peace, but filed no contest until after the county court had adjudged the result of the election, when they filed a paper purporting to be a contest, which the county court refused to consider on the ground that that matter was not then before it. The case was tried in the circuit court alone on the statement of grounds of contest filed after the appeal had been taken and the transcript lodged in the circuit court."

These findings of the circuit court, based upon the record of the proceedings in the county court, were correct, and the circuit court, upon these findings, should have sustained the judgment of the county court dismissing the petition of appellants for a contest before the county court. The circuit court should not have permitted the appellants thereafter to file a pleading in the nature of a complaint, setting out specifically their grounds of contest. In other words, the circuit court should have refused to entertain the proceedings for a contest instituted in that court, in the first instance.

The county courts, under our law, have exclusive original jurisdiction in all matters relating to the local concerns of the county. In *Freeman* v. *Lazarus,* 61 Ark. 247, we said "It is now well settled that the county courts of this State have the right to determine contests concerning the result of elections for the location or removal of county seats on the ground that it is a matter of local concern over which the county courts have jurisdiction." And in *Russell* v. *Jacoway,* 33 Ark. 194, we

said: ''The removal of the county seat is manifestly a local concern of the county, over which the county court has exclusive original jurisdiction, and its authority to determine for itself whether the conditions exist upon which the removal is required is unquestionable. * * * For the circuit court to assume to determine in the first instance, and before the county court has acted in the premises, whether a majority of the electors have, or not, voted for the removal is to withdraw the matter entirely from its jurisdiction.''

The appellants were parties to the proceedings for the removal of the county seat in the county court from the first. They had themselves made parties to these proceedings at the term of the county court when the petition was filed asking for an election to be held on the question of removal. On the 7th of April, after the election was held, and while the county court had before it for consideration the question on the report of the canvassing board, as to whether or not a majority of the votes cast at such election was in favor of removal, the appellants again had themselves made parties for the special purpose ''of appealing from any and all orders that the county court should make.'' The appellants complained to the canvassing board, before they had declared the result of the election on the question of removal, that there had been certain illegal votes cast and asked that the canvassing board recount the ballots in certain townships and their request was granted by the canvassing board, and this board found, going behind the face of the returns, that there had been a majority for removal. This request to the canvassing board to recount the ballots can not be construed as instituting a contest of the election. It does not comply with any of the requirements of the law for such contests. It was directed to the canvassing board, and can only be construed as a request for such board to recount the ballots. There is authority for such request, under the provisions of the general election law. Kirby's Digest, § 2837.

In the case of *Walsh* v. *Hampton*, 96 Ark. 427, we

held that the general election law applies to an election for the removal of a county seat, under the provisions of section 1119 of Kirby's Digest. After quoting section 1119, we said: "It is obvious that the Legislature meant, in the above quoted language, that an election for the removal of the county seat should be understood to mean a general election so as to come within the terms of the general election law and to fall within the scope of the machinery set in motion for that purpose." And it would be well to say, in this connection, in view of another election, and lest silence be taken as approving illegal and irregular procedure, that under the above holding, the returns of the election should have been made to the election commissioners instead of to the county clerk and justices of the peace. See Kirby's Digest, § 2833. This section repeals the provisions of section 1119, requiring the poll books, etc., to be returned to the clerk of the county court. However, no question is raised here by the appellees as to the authority of the clerk and justices of the peace to canvass the returns and declare the result of the election on the face of such returns.

A request to the canvassing board to recount the ballots is quite a different thing from instituting a contest of the election. So it appears that the appellants, while the question was pending before the county court as to whether or not there had been a majority in favor of removal, contended that the canvassing board had power to go behind the returns and to purge the returns of all illegal votes and to declare the result, and that the result as thus declared was conclusive. The appellees, on the other hand, contended that the canvassing board had no other or greater power than to declare the result as shown on the face of the returns. That was the issue that was submitted to the county court for its decision, and the county court correctly held that the duties of the canvassing board were purely ministerial, and that they had no discretionary power to go behind the returns for any purpose. Their duties were simply, from the certificates and ballots received from the several pre-

cincts, to proceed to ascertain and declare the result of the election, and to recount ballots if objection was made to the returns from any precinct. See Kirby's Digest, § § 2836-7; *Howard* v. *McDiarmid,* 26 Ark. 100; *Patton* v. *Coats,* 41 Ark. 111; *Clark* v. *Board of Examiners,* 126 Mass. 285, and other authorities cited in the brief of counsel for appellees. The cases of *Shibley* v. *Van Buren Bridge Co.,* 96 Ark. 410, and *Collier* v. *Board of Improvement, etc.,* 106 Ark. 151, have no application.

The county court, having ascertained from the face of the returns as made to the canvassing board that the majority was in favor of removal, entered its judgment ordering the second election to be held. The appellants thereafter, on the same day, asked the court to set aside its judgment which the court refused and they filed their complaint and notice of the contest in the county court, which the appellees moved to strike out, because the court had already entered judgment upon the returns showing the result of the election. The court sustained this motion of appellees and from the order of the county court, dismissing the appellant's complaint or petition an appeal was prosecuted to the circuit court. It therefore appears that the only question presented on the appeal to the circuit court was whether or not the county court erred in dismissing appellants' complaint setting up their grounds for an election contest. Instead of deciding this question, the circuit court permitted the appellants to file their complaint, setting up their grounds of contest and proceeded, over the objections of the appellees, to hear testimony and to determine the grounds of the contest as set up in the complaint filed in the circuit court. This, as we have seen, the circuit court had no right to do. It was without jurisdiction to enter upon the hearing of a contest that had not been originated and terminated, in the first instance, in the county court.

There had been no contest of the election instituted before and passed upon by the county court. Appellants, it is true, after the judgment of the county court, ordering the second election on the removal, had been

entered, asked the court to allow them to institute a contest. The county court, for good cause shown, could have set aside its judgment and ordered and allowed the appellants to enter upon a contest, but that was a matter within the discretion of the county court, and certainly no abuse of that discretion is shown in the record now before us. Appellants had rested their whole case on the question of law as to the conclusiveness of the finding of the election commissioners, and, having failed on that ground, and not offering to contest the election until the court had entered its judgment for a second election on the question of removal, we are of the opinion that the county court did not err in dismissing the petition of the appellants for a contest. That was the only question before the circuit court, and is the only question before this court.

The circuit court, on appeal, evidently concluded that the county court erred in its judgment ordering the second election, without first hearing appellant's proffered grounds of contest and concluded that it should treat appellants' complaint and notice of election contest as a contest instituted in the county court, and therefore allowed appellants to file additional grounds of contest in the circuit court by way of amendment to the petition that appellants had filed in the county court. But this view overlooks entirely the fact that no contest had ever been instituted and heard as the law requires, in the county court. If the circuit judge, on appeal, concluded that the county court erred in dismissing appellants' complaint and notice for contest filed after the county court had determined the result of the election, then the circuit court could only reverse the judgment of the county court and remand the case to that court with directions to set aside its judgment ordering the second election and to proceed to hear the contest as to the result of the first election. This the circuit court had jurisdiction to do, but it did not have jurisdiction to hear an election contest that had not been heard by the county court.

The complaint filed by the appellants in the circuit court could not be treated as an amendment to appellants' complaint filed in the county court, for the reason that that complaint had been dismissed by the county court because not filed in time, and the only question was whether the same should have been dismissed. There was nothing to amend in the circuit court.

While on appeal to the circuit court from the county court, the issues are tried *de novo,* yet it must be upon the cause of action that was before the county court. The circuit court on appeal may permit amendments to a complaint filed in the county court and determine the issues on the complaint as thus amended, but it can not allow amendments that will change the cause of action, or introduce a new cause of action in the circuit court. See *Freeman* v. *Lazarus, supra;* also, *Kindel* v. *LeBert,* 58 Am. St. Rep. 239.

Inasmuch as the record shows that no contest of the first election was ever had in the county court, and that no contest was offered to be instituted there until after the county court had declared the result of the election, we are of the opinion that the judgment of the county court was correct in dismissing the complaint of the appellants, and that the circuit court was without jurisdiction to enter upon and hear the election contest in the first instance. The judgment of the circuit court, however, in affirming the judgment of the county court, was correct, though based upon erroneous reasons.

The judgment of the circuit court affirming the judgment of the county court and directing the county court to order a new election and to fix the time therefor, is in all things affirmed.